## Cleveland, Cincinnati, Chicago & St. L. Ry. Co. v. Rice.

1. *Practice—Pleading—Withdrawal of a Count—Effect of, etc.*—The withdrawal of a count in a declaration, though a disclaimer of all right to recover under it, does not take it out of being as a subject of reference. It can not thereafter operate *per se* as an averment of anything in the suit, but it is still in existence and a part of the same paper with the other counts.

2. *Ibidem.*—Where the beginning of the first count of a declaration in case was as follows: "In the Macoupin County Circuit Court, State of Illinois, February term, 1891, Emmet T. Rice, the plaintiff, by R. B. Shirley, his attorney, complains of the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, defendant, of a plea of trespass on the case, for that, whereas," etc., alleging that the defendant on a day mentioned, etc. And the beginning of second count was as follows: "And whereas also the said defendant before and on the day aforesaid, in the county, was a railroad corporation," etc. And upon the trial the plaintiff withdrew his first count. *It was held,* that the withdrawn count was still in the case for the purpose of reference, containing as it did the statement of a certain time and place of certain alleged occurrences, and that the second count might properly, by clear reference, incorporate them in its own averment of other occurrences.

3. *Verdict—Conflicting Testimony.*—Where the evidence is conflicting and the jury find a certain way, if there was evidence enough to support their finding it will not be disturbed.

4. *Railroads—Injury to Stock on the Track—Engineer's Duty.*—Whenever the danger of a collision between a railroad train and horses upon the track becomes apparent, whether by their coming upon the track through no fault of the company, or otherwise, it is the duty of the engineer to use whatever appropriate means he reasonably can to prevent or avoid the collision and injury.

**Memorandum.**—Action for injuries to stock. Appeal from a judgment for the defendant rendered by the Circuit Court of Macoupin County; the Hon. JAMES A. CREIGHTON, Circuit Judge, presiding. Heard in this court at the May term, 1891, and approved. Opinion filed October 24, 1892.

The opinion states the case.

*Instruction referred to in the opinion of the court:*
The court instructs the jury, that although they may believe from the evidence that the engineer of the defendant's train saw a number of horses grazing on the defendant's right of way, near the line of its track, before they came onto the track, then he would not be required to

sound the alarm whistle or stop the train (until they came upon the track) and the danger of striking them became apparent, and if the jury believe from the evidence in this case that the defendant's servant, the engineer (as soon as the horses came on the track), used all reasonable diligence to alarm said horses and stop the train, and did stop the train as soon as it could have been done by the exercise of due diligence, then the defendant in this case can not be held guilty of negligence; and if the jury so believe from all the evidence in the case, they should find the defendant not guilty.

The court refused to give the above instruction as asked by the defendant, but gave the same in a modified form, as follows:

The court instructs the jury that, although they may believe from the evidence that the engineer of the defendant's train saw a number of horses grazing on its right of way near the line of its track, he would not be required to sound the alarm whistle or stop the train until the danger of striking them became apparent; and if the jury believe from the evidence in this case that the defendant's servant, the engineer, as soon as the danger of striking the horses became apparent. used all reasonable diligence to alarm said horses and stop the train, and did stop the train as soon as it could have been done by the exercise of due diligence, then the defendant in this case can not be held guilty of negligence, and if the jury so believe from all the evidence in this case, they should find the defendant not guilty.

### APPELLANT'S BRIEF.

"In framing a second or subsequent count for the same cause of action, care was and still is essential to avoid any unnecessary repetition of the same matter; and by an inducement in the first count, applying any matter to the following counts, and by referring concisely in the subsequent counts to such inducement much unnecessary prolixity may be avoided; and this is usual in actions for words, and proper to be attended to in all cases. But unless the second count expressly refers to the first, no defect therein will be aided by the preceding count; for though both counts are in the same declaration, yet they are for all purposes as distinct as if they were in separate declarations and consequently they must independently contain all necessary allegations, or the latter count must expressly refer to the former." Chitty's Plead., Vol. 1, Sec. 414.

"When the plaintiff makes two or more different state-

C., C., C. & St. L. Ry. Co. v. Rice.

ments of one and the same cause of action each several statement is called a count and all of them collectively constitute a declaration. In all cases, however, in which there are two or more counts, whether there is actually but one cause of action or several, each count purports upon the face of it to declare distinct right of action unconnected with that stated in any of the other counts. Bouvier's Law Dictionary, 323.

"Nothing can be intended after verdict but what was expressly stated in the record or necessarily implied from those facts which were stated." I. T. Rep. 141, Tidd's Practice, 9th Ed. 919. "If a declaration contains several counts, any of which is wholly defective, and general damages upon the whole declaration be given, the judgment will be arrested or reversed on error." Chitty's Plead., Vol. 1, 682.

"The owner of cattle killed at a railroad crossing must prove by the preponderance of the evidence that his cattle were killed by the negligence of the employes of the road." T. II. & I. R. R. Co. v. Tuterwiler, 16 Brad. 197; Jacksonville G. L. & C. Co. v. Barber, 16 Brad. 206.

The instructions of the court should be restricted to the issues made by the evidence and pleadings. Nollen v. Windsor et al., 11 Ia. 190; Iron Mountain Bank v. Murdock, 62 Mo. 70; Hall v. Strode, 28 N. W. Rep. 312. When the declaration alleges negligence of the defendant as the ground of liability it is a fatal objection to the instructions that they direct the attention of the jury to other and different elements of liability. Chi. & Alton R. R. Co. v. Mock, 77 Ill. 141; Colum. C., C., & I. R. R. Co. v. Twesh, 68 Ill. 545.

JOHN T. DYE and A. N. YANCEY, attorneys for appellant.

## APPELLEE'S BRIEF.

Even if a railroad is fenced and though stock get on where the company is not bound to fence, yet the employes must use ordinary care and diligence to avoid injuring stock which may be on the road. Ill. Cent. R. R. Co. v. Middleworth, 46 Ill. 494; Ill. Cent. R. R. Co. v. Baker, 47 Ill. 295.

Where stock are upon the track and a train is approaching, though down a slight grade, and the engine driver, instead of stopping his train, pursues them to a point on the track where there is little probability the animals will leave the track, and they are overtaken and killed, the company is guilty of gross negligence notwithstanding it may appear the animals got on within the limits of a town. Ill. Cent. R. R. Co. v. Baker, 47 Ill. 295.

Where stock is killed on a railroad and the engineer could, by the use of ordinary care and skill, without danger, have stopped the train in time to avoid the collision, although the animals were wrongfully on the track, the company is nevertheless liable. T., P. & W. R. R. Co. v. Bray, 57 Ill. 514; T., P. & W. R. R. Co. v. Ingraham, 58 Ill. 129; P. & D. R. R. Co. v. Mullins, 66 Ill. 526.

Where stock get on a railroad track in the day time and can be seen by the engineer half a mile, it is gross negligence not to slacken the speed of the train in time to avoid the danger. Chicago & N. W. Ry. Co. v. Barrie, 55 Ill. 226; Rockford, R. I. & St. L. R. R. Co. v. Linn, 67 Ill. 109.

It is a settled principle by the courts in this State, in a long line of decisions, that where the evidence is conflicting the verdict will not be disturbed unless it is manifestly against the weight of the evidence. Jacquin v. Davidson, 49 Ill. 82; City of Chicago v. Torgerson, 60 Ill. 200; City of Galesburg v. Higby, 61 Ill. 287; Fitch v. Zimmer, 52 Ill. 126; Chicago A. & St. L. R. R. Co. v. Stover, 63 Ill. 358.

" The question of negligence is one of fact which must be left to the jury for determination." Northern Line Packet Co. v. Binninger, 70 Ill. 571.

R. B. SHIRLEY, attorney for appellee.

OPINION OF THE COURT, the Hon. George W. Pleasants, Judge.

Appellee recovered judgment below for $225 damages for the loss of two horses killed on the track, and by a train of appellant.

The declaration contained two counts, one charging neglect to erect and maintain sufficient fences, under the statute, and the other carelessness in the management of the train, to which the defendant pleaded not guilty. Just as the trial was about to commence, or just after it commenced, on leave of court obtained over a general objection, plaintiff withdrew the first count, and it is claimed that this left the second without any statement of venue, title, parties, time or place. Nevertheless, the defendant went on and tried the case on the general issue, taking its chances of a favorable verdict.

If the declaration was in fact left, by the withdrawal of the first count, without any statement of these matters, we are of opinion that, whether they were formal only or substantial, such omission was cured by the verdict, because the issue joined required proof of them, without which it is not to be presumed that the judge would have allowed or the jury given the verdict that was returned. 1 Chitty on Pl. 673.

But we do not concede that it was in fact so left. It begins thus: "In the Macoupin County Circuit Court, State of Illinois, February term, 1891, Emmet T. Rice, the, plaintiff, by R. B. Shirley, his attorney, complains of the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, defendant, of a plea of trespass on the case." We understand that these statements, in a declaration containing several counts, are distinct from each but applicable alike to all. They set forth the title of the court, venue, names of parties and form of action, but no cause of action. That is reserved for the counts respectively, which should also state directly or by reference, the time and place of occurrence of the several facts relied on as constituting it. The first count follows, beginning, "For that whereas," etc., alleging that the defendant, *on a day mentioned*, was a railroad corporation, operating a railroad through *the county named*, and which had then been open for use more than six months; that it neglected to fence, and that, by reason thereof, plaintiff's horses then and there strayed and

went upon the road where it ought to have been fenced, and so were struck by defendant's engine and killed.

The second count, beginning "and whereas, also," avers that "the defendant before and on *the day aforesaid, in the county aforesaid,* was a railroad corporation," etc., and the other facts as having occurred "then and there." The withdrawal of the first count, though a disclaimer of all right to recover for the negligence therein charged, did not take it out of being, as a subject of reference. It could not thereafter operate *per se* as an averment of anything in this suit, but it was still in existence and a part of the same paper with the second count. Containing, as it did, the statement of a certain time and place of certain alleged occurrences, the second count might properly, by clear reference, incorporate them in its own averment of other occurrences. In this case there can be no doubt as to the reference intended.

The evidence shows that the horses in question were being kept in a well fenced pasture of H. S. Dorsey, east of and adjoining the town of Gillespie; that they escaped during the night of July 23, 1890, through a gate opening on a highway about twenty rods from the railroad, and were killed at a culvert a mile and a quarter west of the station by a freight train of twenty-six loaded cars, going west, at about sunrise on the following morning. Their escape is not attributed to any negligence of appellee, who was then in Cincinnati, or of Mr. Dorsey, who had stock of his own and of other parties in the pasture and took good care to have it safe for them. How the gate came to be opened did not appear.

Besides the engineer and fireman, whose testimony, if true, would fully exonerate the railroad company, only one witness was introduced who claimed to have seen the killing, and he claimed to have seen it from the window of an upper room in a farm house an eighth of a mile from the culvert. The other evidence on the part of the appellee was circumstantial—relating mainly to the whistling heard and the horse tracks seen.

It appears that the railroad from Gillespie to the culvert is straight, on a level prairie, with nothing to obstruct the view from a train of the whole right of way. There was a public crossing west of the station, not over a quarter of a mile distant, and a private crossing about ten telegraph poles east of the culvert. The distance between poles was variously stated at 150 to 180 feet. Appellee's horses, running west, were overtaken at the culvert. One was knocked off the track and died soon after; the other was cut in two and part of the carcass carried something more than the distance of four telegraph poles beyond the culvert.

The engineer testified that he whistled for the crossing just west of the station; that he saw six or eight head of horses on the south side of the track; that a mile and a half west he saw them come upon the track; that they came about thirty-five feet ahead of the engine and about one hundred yards east of the culvert; that as soon as they came up he gave the signal of alarm—a succession of short whistles —called for brakes, reversed his engine and stopped about one hundred and fifty feet west of the culvert; that he was then running at the rate of ten or twelve miles an hour, and that from the time they came on the track he could not have stopped the train before it reached the culvert. As to all these particulars he was corroborated by the fireman. Neither of them intimated that after the whistling for the public crossing near the station there was any slacking of speed or any alarm given until the train was only about three hundred feet from the culvert, or that the horses came on the track until then, and then only about thirty-five feet in front of the engine. If they did not positively assert, they clearly imply the contrary. But they were distinctly contradicted by four, if not five disinterested witnesses as to the whistling and by three of them also as to where the horses were on the track. The attention of Mr. Dorsey and Mr. Francis was attracted by the short, rapid, stock-alarm whistling, which must have been begun after the train passed the public crossing, and when three-quarters of a mile from the culvert, which was continued for quite a while and after

an intermission renewed when near it. John Smith, a farmer living an eighth of a mile from the culvert, was just getting out of bed when he heard this whistling, continued, as he says, something like a minute or two. Mr. Harms, living with him, was awakened by it, got up after hearing it twice and went to the window, from which he saw the train, about a quarter of a mile from the culvert, and a bunch of horses running ahead of it, about forty-five or fifty yards, some on the track and some on the sides of it, and watched them until they were struck. Mr. Dorsey and Mr. Francis, who were there directly afterward, saw tracks of horses running west, and barefooted, as were plaintiff's, two telegraph poles east of Mr. Francis crossing, and twelve (being over 2,000 feet) east of the culvert. They went no further east to look for tracks. At about the distance from the culvert that the engineer says they came on the track, these witnesses saw where one went off. Mr. Dorsey did not examine the track between these points, but Mr. Francis walked the whole of it, and his recollection is that the horse tracks were on it all the way. This testimony can not be reconciled with that of the train hands. If true, it tends to show that the danger to these horses must have been apparent to the engineer from a point at least half a mile east of the culvert, within which distance he could easily have put the train under control sufficient to stop whenever it should reasonably appear to be necessary in order to avoid it; and whether he failed to do it and such failure was culpable negligence, were questions for the jury. We think there was evidence enough to support their finding.

It was said that there was no evidence in the record tending to show that the appellant was in any way connected with the injury complained of. In making that point, however, counsel were thinking only of the evidence on the part of the plaintiff; for it was very clear that if he did not prove it the defendant did, most distinctly, by half a dozen of its employes, including the engineer and fireman.

We see no error in the refusal of the court to admit evidence that the railroad was well fenced. The direct issue

on that point was eliminated by the withdrawal of the first count, and it does not appear that this evidence might have been material to the issue on the second. It was not submitted to the jury by the first instruction for plaintiff. The sufficiency of the fence was rather thereby admitted.

Two instructions were asked and given for the plaintiff, the first of which is criticised for ambiguity. We perceive in it no such want of clearness as might mislead the jury. The rule of law announced in it is substantially conceded by the first, asked and given for the defendant, and in our judgment is correct.

For defendant the court was also asked to instruct absolutely to the effect that the engineer, seeing horses grazing on the right of way near the track, would not be required to sound the alarm whistle or stop the train until *they* "*came upon the track, and* the danger of striking them became apparent;*" which the court modified by striking out the words in italics, and gave as so modified. Of this action serious complaint is made. We think it groundless. The instruction as asked was of the old-fashioned kind, given when the courts assumed to tell the jury that specific acts or omissions were or were not negligent. It assumes that the horses were seen to be only grazing until they came upon the track, and that the issue was whether the engineer ought to have sounded the alarm whistle or stopped the train sooner than he did, whereas, the real issue was whether there was a want of ordinary care in the management of the train—culpable negligence—whether in failing to whistle, or to stop, or to slow up, or otherwise, causing the injury. We think the law is and ought to be that whenever the danger of collision becomes apparent, whether by their coming upon the track or otherwise, it is the duty of the engineer to use whatever appropriate means he reasonably can to prevent or avoid it.

On the whole, the instructions given for the defendant were favorable, as the law would warrant, and the case required.

Seeing no substantial error in the record we must affirm the judgment.