### Chicago and Grand Trunk Railway Company v. Frank T. Kinnare, Administrator, etc.

#### Gen. No. 10,494.

1. NEXT OF KIN—*averment of, essential to recovery, in action on the case for death caused by alleged wrongful act.* It is essential in such an action that the declaration aver that the deceased left next of kin him surviving.

2. NEXT OF KIN—*when averment of declaration as to, sufficient for purposes of recovery.* Notwithstanding all those counts which contain the averment that the deceased left next of kin are taken from the jury by instruction, they are not so taken for purposes of reference, and even if they were, the irregularity would be cured by verdict, and likewise

could not be availed of by the defendant where he has gone to the jury treating the declaration in his instructions as though it contained such averment.

3. CUSTOM—*when proof of, incompetent.*  In an action on the case, if the death of the plaintiff's intestate was found by the jury to have resulted from a defect of a railroad track of the defendant, it is improper to show that it was the practice of other railroad companies to do as was shown the defendant had done, and that worn rails from their main tracks had been put in use in their side tracks according to the practice of other companies.

Action on the case for death caused by alleged wrongful act.  Error to the Circuit Court of Cook County; the Hon. HENRY B. WILLIS, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1902.  Affirmed.  Opinion filed July 12, 1904.

**Statement by the Court.**  Appellee's intestate was a switchman in the service of appellant and at the time of his death was at work in its Blue Island yards.  Track 7 in those yards was a "gravity switch track;" that is, it descended towards the south sufficiently to cause cars to run in that direction by the force of gravity alone.  Five cars were placed upon the upper end of this track and started to run south.  These cars had sides and ends three feet high with a brake upon the north end of each car as it stood upon the track.  On the outside of the end of the car where the brake was, there was a ledge or platform twelve inches wide upon which the switchman stood when he set the brake.  Upon the other end of the car there was only a ledge two inches wide.  The opening between the cars was from eighteen to twenty-four inches.  While the cars were in motion the deceased got upon a car and set the brake.  He then attempted to pass to the next car north to set the brake on that car and while passing from one car to the other fell between the cars, was run over and killed.  This is an appeal from a judgment for $3,000 recovered by his administrator, for wrongfully causing his death.

KENESAW M. LANDIS, for plaintiff in error; ALBERT M. CROSS, of counsel.

JAMES W. TAYLOR and EDWARD H. TAYLOR, for defendant in error; THOMAS TAYLOR, Jr., of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The amended declaration upon which the case was tried consists of four counts. The first count contains an allegation that deceased left a father, mother and two sisters, naming them, who were deprived of their means of support by his death. None of the other counts contains any allegations as to the next of kin. The court instructed the jury that under the evidence the plaintiff could not recover under either the first or second counts.

It is claimed that this instruction, in effect, took the first and second counts out of the declaration and left the third and fourth counts defective, for the want of any averment in either, that the deceased left next of kin who sustained damages by his death. A declaration without such an averment is fatally defective. St. Luke's Hospital v. Foster, 86 Ill. App. 282. But the first count was not taken out of the declaration, as a subject of reference, by the instruction that there could be no recovery under it. C., C., C. & St. L. R. R. Co. v. Rice, 48 Ill. App. 51. "Unless the second count expressly refers to the first, no defect therein will be aided by the preceding count. * * * Each must independently contain all necessary allegations, or the latter count must expressly refer to the former. The commencement of the second count, ' And whereas also,' etc., is sufficiently positive." 1 Chitty's Pleading, 413. The second, third and fourth counts each begin with the words " and whereas also," etc., and this was, we think, a sufficient reference to the allegations of the first count as to the next of kin.

Again, after the instruction that there could be no recovery on the first count was given, the court gave for the defendant the following instruction :

"The jury are instructed that if you shall find for the plaintiff in this case, you can only allow such damages as shall make good the actual pecuniary loss sustained by the next of kin of the person deceased, and that the sorrow or mental suffering or grief of his said next of kin are not proper elements to be considered by the jury in the calculation of damages. You must ascertain from the facts and

circumstances in evidence the actual pecuniary loss sustained by said next of kin as nearly as they can approximate thereto, and this pecuniary loss as found by you from the evidence must be the sole measure of damages."

The cause was then submitted to the jury without even a suggestion that the declaration was defective, and the defendant took the chance of obtaining a favorable verdict.

The most that can be said is, that while the first count contains the necessary allegations as to the next of kin, the references necessary to make those allegations a part of the third and fourth counts were imperfect or defective and such defects or imperfections are cured by verdict. 1 Chitty's Pleading, 673.

It is also contended that the verdict is against the evidence. The claim of appellant is, that the deceased in attempting to pass from one car to the other slipped and fell upon the rail between the cars; that after he had so fallen, in passing over his body, the forewheels of the forward trucks of the car to which he was attempting to pass ran off the track. The claim of appellee is, that when the deceased was in the act of passing from one car to the other, the forewheels of the forward trucks of the car to which he was passing ran off the track and the sudden jolt caused him to lose his balance and fall between the cars. As to the defects in the rails, one witness for plaintiff testified that the rails were slivered up; and that a piece was broken out of one rail and gone. Another of plaintiff's witnesses described this defect as "a piece broken out of the ball of the rail, that is, the top part of it," and as "a crease in the rail on the top." Another said, "The rail was slivered on the top; a part of the flange of the rail was gone, probably a foot or more." Another said, "There were places on the rail where there were pieces gone." Another said, "We seen there was a piece out of the rail; didn't make a close examination about that."

Counsel for appellant concede that the evidence shows that a portion of the top of the T-rail had been broken off. The evidence warranted the jury in finding as facts that

the first wheel marks on the ties were some feet south of the place where the top part or flange of the T-rail was broken off and missing, that the body of the deceased was found four feet south of the first wheel marks on the ties, and that the first blood stains were eight or ten feet south of the defective place in the rail. On the other hand four of the five cars passed over the defect and only the fore-wheels of the forward trucks of the fifth car left the track. The rail was not broken through and the cars were moving at the rate of only four or five miles an hour. The witnesses who saw the accident could not, we think, from what they saw, determine whether deceased fell before or after the wheels left the track. We think that the jury were, from all the evidence, warranted in finding against the contention of appellant and in favor of the claim and contention of appellee, as to the manner in which the accident occurred.

But if the contention above stated be found in favor of appellee, it is insisted that there is no evidence from which the jury could properly find that the defendant was guilty of negligence in permitting the track to be and remain in the condition in which it was.

The third and fourth counts of the declaration charge that the defendant negligently, etc., provided for and put into said track splintered and broken rails, etc., and negligently suffered said track to be and remain in an unsafe and dangerous condition whereby the accident happened, etc. The defendant was, as to the deceased, bound only to use reasonable care to provide a reasonably safe track for its cars to run upon. Whether the track in its then condition was reasonably safe, was a question of fact for the jury, and their finding that it was not reasonably safe cannot, in our opinion, be said to be against the evidence.

It is also insisted that the deceased assumed the risk of the defect in the switch track which plaintiff's witnesses describe. In C. & E. I. R. R. Co. v. Hines, 132 Ill. 161, the deceased, a switchman, lost his life because of the failure of the defendant company, his employer, to properly bal-

last its tracks. In that case it was said (p. 168):. "The allegation of due care in the deceased negatives negligence, and, by implication, that he had knowledge of the defects by reason of which he was injured. * * * But it is matter of defense that the deceased had knowledge of the defects through which his injury was sustained. Unless it shall appear from the evidence that he had such knowledge, it will not be presumed. * * * The burden of furnishing safe machinery, appliances, surroundings, etc., is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect. Shearman & Redfield on Negligence (2d ed.), sec. 85; Bishop's Non-Contract Law, sec. 678; Porter v. Hannibal & St. Joseph Railroad Co., 60 Mo. 160. And, necessarily, much more is the servant entitled to assume that his master has furnished him with suitable and safe materials, machinery and surroundings, and relieved him of investigation and inquiry in that regard, where, as in the present instance, the performance of his duties requires constancy of attention to other matters. A man whose attention is constantly directed to moving cars, and their coupling and uncoupling, cannot possibly give much attention to the ties, switch-bars, etc., over which he may, from time to time, have to pass."

We cannot say under the evidence in this case that the finding of the jury, by implication, that the deceased did not have knowledge of the defect in the track by reason of which they, by implication, found that he was injured, was against the evidence and therefore cannot say that their finding, also by implication, that the risk of danger from such defect was not assumed by the deceased, was against the evidence.

It is also insisted that it was error to exclude evidence that it was the custom and practice of railroad companies

in that vicinity to take worn rails from their main tracks and put them in use in switch tracks, and that often splintered rails were taken from main tracks and used in switch tracks.

In C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, it was held that in an action charging a railroad company with negligence in failing to place a butt-post at the end of a stub switch, evidence that other railroads use butt-posts is inadmissible. If evidence as to the use of butt-posts by other companies was inadmissible in that case to show negligence, it would seem to follow that evidence that other railroad companies used worn rails in switch tracks was inadmissible to meet the charge of negligence in this case.

The objection that the damages are excessive is without merit. The deceased was a single man thirty-four years old. He lived at home with his parents and sisters. His father was fifty-eight years old, in poor health and unable to work. The deceased earned from sixty-five to one hundred dollars per month and his mother testified that he had been letting her have about fifty dollars per month. It is true that it is not in terms testified that this money was given to the mother for the support of the family, but we think the jury had the right to infer that it was so given.

The judgment will be affirmed.

*Affirmed.*