## Mary Shaughnessy, Appellee, v. George H. Holt, Appellant.

### Gen. No. 13,954.

1. PLEADING—*when count stricken from record stands for certain purposes.* A count stricken from the record by order of court, nevertheless remains for purposes of reference or as the basis for allegations of additional counts.

2. EVIDENCE—*what competent upon question of personal injuries.* A plaintiff may properly testify to subjective symptoms, including sensations, resulting from a test applied by physicians not seeking to treat but to qualify as expert witnesses.

3. EVIDENCE—*to what expert may testify with respect to personal injuries.* An expert may properly be permitted to testify that such an accident as happened to the plaintiff could cause the condition found upon an examination of the plaintiff.

4. EVIDENCE—*what appropriate subject of expert testimony.* Expert testimony is competent upon the question as to the effect of an automatic elevator stop.

5. VERDICT—*when not disturbed as excessive.* A verdict for $7,500, rendered in an action on the case for personal injuries, is not excessive, where it appears that the plaintiff suffered serious injuries of a permanent character which materially reduced her ability to work and to earn a livelihood.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. A. H. FROST, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed April 17, 1908.

**Statement by the Court.** This appeal is from a judgment of the Superior Court in favor of appellee and against appellant for the sum of $7,500 for personal injuries claimed to have been sustained while a passenger in appellant's elevator, October 20, 1902.

The evidence in the record tends to show that appellee was employed on the twelfth floor of the Manhattan building in Chicago, which is owned by appellant. Appellee claims she entered the elevator at the ground floor of the building to go to the twelfth floor. After appellee entered the car, as she claims, it went up to about the tenth floor of the building, and a passenger signaled to go up as the car passed. The elevator man attempted to return for the passenger, but the car went on down to the main floor and struck with a thud and rebounded.

According to the claim of appellant, appellee entered the car at the twelfth floor, and when the car in decending was between the second and third floors, the elevator man, as was his custom, tried to pull the operating cable running through the elevator cage for the purpose of reducing the speed of the car before it came in contact with the automatic device for stopping the car gradually at the ground floor. He found it impossible to move the cable, which, at its lower end, ran over a sheave and connected with a valve which opened and closed an aperture in the cylinder.

The cable failing to respond to the efforts of the elevator man, as above stated, the car continued its descent at full speed, striking the automatic device, and rebounded about a foot.

The fall and rebound were sufficient to loosen the safety dogs which, when the car came to a full stop and rebounded about a foot above the floor, were set against the wooden guides, and held the car a foot above the floor.

The elevator was operated by hydraulic power, and as the water entered the cylinder at one end it forced the piston head along in the cylinder. Cables were attached on traveling sheaves which ran over sheaves at the top of the building, and the ends were attached to the elevator car, thus applying the power to the car.

Eight inches below the main floor level in the ele-

vator shaft was a floor made of inch boards. From beneath this floor the cable which the elevator man handled to control the elevator ran over the sheave and up through a hole in the floor and through a hole in the bottom of the car up through the car.

The cause of the accident, as shown by the record, was a piece of common garden hose, used by the elevator man around the operating cable to prevent the cable from blistering his hands, which, falling down through the bottom of the car to the sheave around which the operating cable ran, became wedged in between the cable and the sheave just below the bottom of the elevator shaft.

The plaintiff, appellee, claims to have suffered from the shock a split of the head of the tibia, which is the large bone of the lower part of the leg, nervous injuries and injuries to her internal organs.

The jury returned a verdict for the above amount against appellant, and after overruling motions for a new trial, and in arrest of judgment, the court entered judgment on the verdict.

JOHN E. KEHOE, F. J. CANTY and ROBERT J. FOLONIE, for appellant.

BURTT & KRIETE and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The denial of the motion in arrest of judgment is urged as error. The contentions are that there was no valid declaration of appellee upon which recovery could be had, and, secondly, the court erred in sustaining demurrers to the pleas of the Statute of Limitations filed to the first, second and third amended counts and the tenth additional count.

Each of the first three counts of appellee's original declaration, after stating the negligence upon which appellee predicated her right to recovery con-

cluded, "by means whereof plaintiff was then and there injured as hereinafter set forth." The original fourth count, which contained allegations of injuries, was stricken out by order of court entered March 1, 1905, and a motion of appellee for leave to file an amended fourth count was overruled, and by this action of the court appellee abided. This left the declaration consisting of three counts, none of which, it is claimed, contained any allegation that appellee suffered injury to her person, or of what such injuries consisted. The record so remained until February 3, 1906, when appellee by leave of court filed additional counts to the declaration. The new additional counts stated no new cause of action, but each count alleged the same damages which were averred in the original fourth count. Appellant filed pleas of the Statute of Limitations to the fifth, sixth and seventh and tenth of these additional counts and the court sustained demurrers to the pleas.

In our opinion the original fourth count, although stricken out by the court, remained in the record as a basis for amended counts. The effect of striking this count out of the declaration was the same as sustaining a demurrer to it. The count was thus withdrawn from the consideration of the jury, but it was not taken out of the declaration as a subject of reference, or as a basis for the allegations of the additional counts. N. C. St. R. R. Co. v. Aufmann, 221 Ill. 614; C. & G. T. Ry. Co. v. Kinnare, 115 Ill. App. 132. We do not think the court erred in sustaining the demurrers to the pleas. As to the tenth additional count, it is an exact replica of the original second count except that the words, "and construction," are inserted, and it is claimed that this amounts to, and constitutes, an entirely new claim of negligence, which was not injected into the case until after the Statute of Limitations had run.

Inasmuch as this count was instructed out of the case by the court in the first instruction, any contro-

versy over it seems to be idle for that reason, and for the further reason that no question of construction arose in the case. No claim was made of defective or negligent construction, or that appellant should have used a different kind of elevator or a different kind of automatic stop. We therefore do not consider it necessary to pass upon the question whether it was error to sustain a demurrer to the plea to this count, for if the ruling was erroneous it became immaterial and harmless when the count was withdrawn from the consideration of the jury.

Errors are assigned on the rulings of the court in the examination of appellee as to the tests used by Drs. Cox, Pettyjohn and Stubbs, the sensations produced thereby, and appellee's declarations at the time as to such sensations or want of sensation. The fundamental objection made to the evidence is that a party cannot make evidence for himself by his own declarations when such declarations are not a part of the *res gestae.*

It is somewhat difficult to state within a narrow compass the questions of evidence presented by the record in the examinations of appellee and the physicians, who examined her for the sole purpose of testifying as to her condition, and not in the course of treatment of appellee.

It appears from the evidence that appellee is suffering from a deterioration of the nervous system known as neurasthenia. The test which the physicians applied to various parts of appellee's body is known to neurologists as the "Berlinski test." This consists in the application of a test tube containing hot water, a test tube containing cold water, a piece of metal which feels cold when applied to a person's skin in its normal sensitiveness, a piece of wood and a piece of cloth.

It is clear from the evidence that the existence of the symptoms was of importance in the diagnosis of appellee's condition. Appellee's testimony as to her

subjective symptoms was competent. We see no sound objection to appellee's testimony as to her sensations, or the absence of sensations, when the physicians applied the tests to her body, which they deemed necessary in arriving at a correct diagnosis of her nervous condition. Her testimony as abstracted is as follows:

"They (the three physicians) made tests with hot and cold and metal and wood. When they made these tests I closed my eyes. I was asked whether I felt or not in various parts of my body, and answered. When I felt it hot I said so. When they used the cold test and (I) felt it cold I said so. When they used anything different and said anything about it, I said whether I could or could not feel. When I had my eyes closed and they did anything that I felt I said so. I was asked whether I felt or not in various parts of my body during that examination when my eyes were closed, by these physicians. In that examination I answered correctly as to whether I felt. I answered truthfully."

In substance this testimony, in our opinion, was competent and relevant.

After appellee had given this testimony, the physicians testified to the making of the examination substantially as testified to by appellee. They bared appellee's limbs and applied the tests. Dr. Stubbs was then asked this question: "Assuming that when you made that examination her answers as to whether she felt hot or cold or how it felt to her were truthful, that she answered truthfully as to how it felt to her, what was the fact as to her actual sensitiveness and power to determine heat and cold, from your examination?"

To this question the doctor answered that appellee did not answer correctly; that she was correct on the right side, and incorrect on the left side.

Substantially the same question was put to the other physicians. Dr. Cox testified that appellee's

sensitiveness on the left side was not as great as on the right side. Dr. Pettyjohn answered: "There was what I termed defective sensation; that is, she could not tell whether it was a piece of metal, a piece of wood or a piece of cloth, and that is what I call defective sensation. I found it on the left leg only."

We are of the opinion that the admission of this testimony was not erroneous. Consolidated Traction Co. v. Lambertson, 60 N. J. Law, 452.

On the authority of City of Chicago v. Didier, 227 Ill. 571, we hold that physicians who had examined appellee could properly testify that such an accident as happened to appellee could cause the condition which they found, and that on the hypothesis put to them they could see the relation of cause and effect between the injury and the subsequent physical condition of appellee as they found it on examination.

Error is assigned upon the rulings of the court in admitting the testimony of elevator experts, as to what effect an automatic stop, of the kind described by appellant's witnesses as being in the elevator in question at the time of the accident to appellee, would have under the circumstances shown by the evidence, and when it was set to commence to close the valve when the car was two and one-half to three feet from the bottom of the shaft. The testimony was objected to upon three grounds, first, that the witnesses had not qualified as experts; second, that it was not a matter of expert testimony; and, third, it invaded the province of the jury. We think the witnesses had qualified sufficiently to entitle their opinions to go before the jury. Lawson, Expert Evidence (2d Ed.), p. 74. We think also that it was a subject for expert testimony. McGregor v. Reid, Murdoch & Co., 178 Ill. 465, 467; Slack v. Harris, 200 id. 96, 107; Springer v. Schultz, 105 Ill. App. 544, affirmed in 205 Ill. 144.

The questions whether the particular automatic stop used at the time in the elevator in question could be set so as to produce a gradual stop, and how high

above the floor the car must be when the automatic stop commences to act in such an elevator as the one in question in order to produce a gradual stop, were also the subjects for expert testimony. We find no reversible error in the rulings of the court in the examinations of the elevator experts.

With reference to the action of the automatic stop device, the question as to whether the witnesses assumed there was a rope buffer or a rubber buffer was and is immaterial, as it seems to us, for the evidence is that the automatic stop is designed to operate before the buffer acts, whether it be rope or rubber. The buffer is not a thing against which the car strikes. It is in the end of the cylinder, and merely prevents the piston from striking and breaking the cast iron cross-head of the cylinder when it comes against it. Furthermore, the question assumed the fact that there was a rubber buffer in use as appellant claimed; and the evidence of appellant's witness Anderson tended to show that a rope buffer was as good, if not better, than a rubber. There was no reversible error, we think, in the examination of these witnesses on this subject.

The elevator expert witnesses called by appellee were not permitted to, and did not testify to or make any comparisons between the safety appliances in use in the elevator in question and other safety appliances. To prove that they had seen and worked with safety appliances of various kinds, and understood them, was proper to show their experience and knowledge. This was not in effect giving evidence of the customary manner of the construction of safety appliances, and therefore was not incompetent under the rule stated in Hansell v. Clark, 214 Ill. 399 (413).

Our attention is called to what is claimed to be improper conduct on the part of counsel for appellee in making certain remarks before the jury tending to create a prejudice in their minds, and in the cross-examination of Dr. Leaming. We do not think the

record shows any serious misconduct on the part of counsel, or that what counsel said in argument, or his cross-examination of the witness, was of such serious nature as to justify us in reversing the judgment on that ground.

According to the testimony in the record, appellee suffered serious injuries of a permanent character. Her injuries were of such character that not only her ability to work is seriously reduced and circumscribed, but her health is permanently impaired. The amount of the damages is in the first instance a question for the jury. Unless the amount awarded by the jury is so excessive as to indicate that it is the result of passion or prejudice, or some improper motive or influence, we ought not to interfere. The damages awarded are not so large as to shock the sense of right, or lead the judicial mind to think that they are the result of passion or prejudice. We cannot regard them as excessive.

We are of the opinion that there is no error in the record which would justify us in reversing the judgment below.

The judgment is affirmed.

*Affirmed.*